## Joshua P. Tatum *v.* Wright, Williams & Co.

Plaintiff sold his cotton, in Arkansas, to a purchaser, who paid the largest proportion of the price in counterfeit bank notes; the purchaser brought the cotton to New Orleans, and defendants advanced on it. Plaintiff sued defendants for the value of the cotton. It was held, that he could not recover, notwithstanding the statute of Arkansas provides that the owner may recover the property out of which he has been swindled, from any subsequent holder. And, by the court: We cannot enforce a rule, resting for its exercise in comity, to the detriment of the rights of our own citizens, secured under our own laws, and the interests of commerce. The plaintiff, in this case, by putting his cotton in the possession of the purchaser, as owner, reposed confidence in him, gave him credit, and enabled him to commit a fraud on the defendants; and the equity of the original owner is not equal to that of the defendants, who have parted with their money, on the faith of a state of things which the plaintiff, himself, was the cause of being created.

APPEAL from the Second District Court of New Orleans, Lea, J.  *Bonford* and *Finney*, for plaintiff. *Thos. Allen Clarke*, for defendants. By the court:

Eustis, C. J.  The plaintiff, who is a planter, residing in the State of Arkansas, recovered judgment against *Wright, Williams & Co.*, cotton factors of this city, for the sum of seven hundred and one dollars, being the value of fourteen bales of cotton. The defendants have taken this appeal.

The substance of the plaintiff's case, as stated in his petition, is this : The plaintiff's cotton was in a warehouse in Wilmington, Union county, Arkansas, where the plaintiff lives. A man by the name of *Williams*, representing himself as a member of the defendants' house, purchased the cotton from the plaintiff, on or about the 12th of February, 1851. The plaintiff delivered the cotton, and received in payment of the price, seventeen bills, purporting to be of the Union Bank of this city, of fifty dollars each, and some forty dollars in money. On the day of the sale, the cotton was shipped on board a steamer, and consigned to to the defendants, in New Orleans, who received it on its arrival. The man, calling himself *Williams*, was a swindler, and the notes were counterfeit, and the plaintiff was thus defrauded and cheated out of his cotton. The plaintiff contends, under these facts, that he was never divested of the ownership of the cotton, and so held the district judge, who gave judgment accordingly.

It appears the cotton was shipped, under a bill of lading, to the defendants. On the arrival of the steamer, *Williams* called at the defendants' counting-house, stating that he had come down with the cotton, and on the receipt of the bill of lading, with other bills of lading from the clerk of the boat, the defendants advanced him $500 on the shipment.

The argument in favor of the plaintiff's case is, that the title or right of ownership of *Williams*, must be determined by the laws of Arkansas, the place where the purchase was made; and if, by those laws, the property was not vested in him, by his purchase, no transmission of the thing elsewhere, or any transfer by sale or otherwise, could remedy this want of title, and consequently the title remained unchanged in the plaintiff. It is said, and it seems to be conceded, that a statute of Arkansas makes the crime of swindling larceny, and provides that the original owner may recover his property, out of which he has been swindled, against any subsequent holder. The effect of this statute would be to make the title acquired by *Williams* absolutely void.

Authorities have been adduced in support of this argument which, it is contended, are uncontradicted, and that the rule is well established, that a title void in the place where it is created and acquired, is void every where, and can obtain no validity by the transmission of the subject of it to another jurisdiction. We have, on several occasions, been very much embarrassed in the application of what are assumed to be established rules in the conflict of laws, and we have been admonished of the danger of recognizing any rule as of universal application, under all contingencies and circumstances, without any exception whatever. The facts of this case, we think, prevent it from falling under the rules urged by counsel as exclusively regulating it.

From the evidence, and indeed from the plaintiff's own statement of his case, it is manifest, that at the time of the sale of the cotton, New Orleans was to be its destination, and that it was to be sent there for purposes of traffic and resale. The swindler personated a member of the mercantile house in this city; the cotton was in a warehouse on the bank of the river, and, the plaintiff himself alleges, was, on the day of the sale, shipped on board the steamer bound to New Orleans, and consigned to the defendants' house.

There is no question as to the agreement to sell, and the delivery, under the agreement, of the cotton to the purchaser, nor as to the receipt of some forty dollars in money and the bank notes in payment of the price. Under the common law, which prevails throughout the United States, these facts would vest the property in the vendee, and a sale by him to a *bonâ fide* purchaser, for a valuable consideration, would be valid. It is the same under our system of jurisprudence.

The plaintiff transferred the possession of the cotton, with the intention of divesting himself of it. Knowing the purpose for which the possession of it was sought, and for which it was to be made available, he surrendered the dominion over it, and enabled the purchaser to transmit it to its destination, as cotton is usually sent to market, for sale. He was cheated by false tokens and false representations. But the delivery to the purchaser *animo demini* enabled the purchaser to appear as the owner, and obtain a *bonâ fide* advance on the cotton, in the ordinary course of trade in this market. This is not a delivery to an agent or a trader, but to a person whose avowed object was to use it in commerce in New Orleans.

Supposing the effect of the statute of Arkansas to be as contended for by the counsel for the plaintiff, we cannot enforce a rule, resting for its exercise in comity, to the detriment of the rights of our own citizens, secured under our laws, and the interests of commerce.

The plaintiff, in this case, by putting his cotton in the possession of the purchaser, as owner, reposed confidence in him, gave him credit and enabled him to commit a fraud on the defendants; and the equity of the original owner is not equal to that of the defendants, who have parted with their money, on the faith of a state of things which the plaintiff himself was the cause of being created.

The judgment of the district court is therefore reversed, and judgment rendered for the defendants, with costs in both courts.